IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAM BROUSSARD, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 1:17-cv-00570 |
| | § | |
| CHRISTOPHER GRETA AND | § | |
| LOREE GRETA, | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT OF PLAINTIFF INTERPLEADER LSG VODKA LLC D/B/A PERSPECTV DISTILLING CO.

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Interpleader LSG Vodka LLC d/b/a Perspectv Distilling Co. (herein after referred to as "LSG") makes and files this, its Original Complaint against Defendants CHRISTOPHER GRETA and LOREE GRETA.

### I. THE PARTIES

1.     Plaintiff is a Texas Corporation with its principal place of business in Travis County, Texas.

2.     Upon information and belief, Defendant Christopher Greta is an individual and a citizen of the State of Texas and has been served with process at 11921 Mira Mesa Drive, Austin, Texas 78732.

3.     Upon information and belief, Defendant Loree Greta is an individual and a citizen of the State of Texas and has been served with process at 11921 Mira Mesa Drive, Austin, Texas 78732.

**EXHIBIT C**

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction as the case arises under the anti-fraud provisions of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b), and the Securities Exchange Commission Rule 10-b (17 C.F.R. §240.10b-5).  The jurisdiction of this Court is invoked pursuant to 20 U.S.C. §133 and 15 U.S.C. §78aa.  This Court has jurisdiction pursuant to 28 U.S.C §1367 because Plaintiff's remaining claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

5.      Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1400(a) because Defendants are residents of Texas and reside in the Western District of Texas.

6.      Venue is proper in this Court pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa and under 28 U.S.C. §1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims occurred in the Western District of Texas.

## III.    FACTS

7.      From 2012 to present, Defendant Christopher Greta approached numerous individuals regarding "Sh!t vodka" concept, including W. Scott Murray of LSG, William Broussard, individuals in bars, individuals in restaurants, friends and neighbors and anyone else who would listen to the concept.

8.      On or about October 1, 2014, William Broussard and Defendant Christopher Greta formed a member managed limited liability company under the laws of the State of Texas known as Flagrant Brands, LLC ("Flagrant Brands"). See Exhibit 1, Certificate of

**EXHIBIT C**

Formation of Limited Liability Company as previously filed as Exhibit 1 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

9.    Flagrant Brands filed a trademark registration application with the United States Patent and Trademark Office with respect to the brand that Flagrant Brands intended to use, "Sh!t Vodka." See Exhibit 2-3, Trademark Application and receipt, as previously filed as Exhibit 2-3 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

10.   In late November or early December of 2015, Defendant Christopher Greta met with W. Scott Murray, LSG's CEO and founder.  Defendant Christopher Greta presented his business concept to Mr. Murray and asked for his assistance in the company.

11.   When negotiating with LSG, Defendant Christopher Greta stated that Flagrant Brands owned the rights to "Sh!t vodka"  and had filed the application for a trademark for "Sh!t vodka."

12.   In December of 2015, LSG again met with Defendant Christopher Greta, and offered to run Flagrant Brands for a 40% equity interest.  Defendant Christopher Greta rejected the offer as "too rich."

13.   LSG than countered and offered to buy Flagrant Brands.  Defendant Christopher Greta requested a proposal.

14.   In late December of 2015, Defendant Christopher Greta and Mr. Murray corresponded via email and reached an agreement for LSG to purchase an eighty percent (80%) interest in Flagrant Brands and for employment for Defendant Christopher Greta for at least three (3) years.

**EXHIBIT C**

15.     On or about January 16, 2016, LSG sent Defendant Christopher Greta a Proposed Term Sheet in which LSG offered to acquire an eighty percent (80%) membership interest in Flagrant Brands for a onetime payment of $1,000,000.00.   See Exhibit 3, Proposed Term Sheet as previously filed as Exhibit 26 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

16.     The term sheet included a signature line for Defendant Christopher Greta and his business partner (now known to be William Broussard).   Defendant Christopher Greta had yet to disclose the name of the business partner to LSG.   *Id.*

17.     The January 16 Term Sheet also offered Defendant Christopher Greta employment with LSG for three (3) years with a salary of One Hundred and Fifty Thousand Dollars ($150,000.00) a year.   *Id.*

18.     The January 16 Term Sheet provided that LSG would actively support Flagrant Brands by providing management, operations and capital.   *Id.*

19.     Under the January 16 Term Sheet, the remaining twenty percent (20%) interest would remain equally divided between the current members of Flagrant Brands (Defendant Christopher Greta and his business partner, now known as Plaintiff William Broussard).   *Id.*

20.     On or about January 16, 2016, Mr. Murray asked Defendant Christopher Greta for the name of his business partner so that he could fill in the blank of the January 16 Term Sheet.

**EXHIBIT C**

21.     Defendant Christopher Greta informed Mr. Murray that he had purchased his partner's interest and now owned one hundred percent (100%) of the membership interest in Defendant Flagrant Brands.

22.     On or about January 20, 2016, Defendant Christopher Greta met with William Broussard and informed him that he was unable to negotiate a deal between Flagrant Brands and LSG.   Defendant Christopher Greta expressly stated to Mr. Broussard on January 20, 2016 that the deal with LSG would not be moving forward.

23.     Based on the assertions by Defendant Christopher Greta that the deal with LSG was dead, Mr. Broussard agreed to sell his interest in Defendant Flagrant Brands to Defendant Christopher Greta for $5,000.00.  On January 21, 2016, Defendant Christopher Greta purchased Mr. Broussard's interest in Defendant Flagrant Brands for $5,000.00. See Exhibit 4, Purchase Agreement Between Christopher Greta and William Broussard dated January 20, 2016, as previously filed as Exhibit 7 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

24.     On or about February 3, 2016, Defendant Greta signed the Term Sheet with LSG Spirits LLC (the "Summary Term Sheet"), which was unchanged from the January 16 Summary Term Sheet, except for elimination of the blanks for the name of the business partner.  See Exhibit 5, Term Sheet, previously filed as Exhibit 8 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

25.     Based on the comments and actions of Defendant Christopher Greta, Mr. Murray suspected that Defendant Christopher Greta had not been honest with his partner.  As such, LSG asked Defendant Christopher Greta if he had shared LSG's offer with his

**EXHIBIT C**

business partner.   Defendant Christopher Greta responded, "No, do you think I'm stupid?"

26.     During LSG's due diligence, Defendants provided LSG with the sales agreement between Mr. Broussard and Defendant Christopher Greta.     See Exhibit 5, Sales Agreement between Plaintiff William Broussard and Defendant Christopher Greta.

27.     In early March of 2016, LSG began the exercise of conducting consumer research and determined "Sh!t vodka" was not well received by focus group participants. However, the concept "The Sh!t vodka" did exceptionally well with the focus groups.  As such, LSG decided to change the name of the brand to something more consumer friendly after the deal closed to reflect something positive ("The Sh!t") and not offensive ("Sh!t").

28.     In early March of 2016, Mr. Broussard, who had previously done the trademark application for "Sh!t vodka," made numerous attempts to contact Defendant Christopher Greta to inform him of a March 10, 2016 deadline for an appeal of the rejection of Flagrant Brand's request for reconsideration of an application to the United States Patent and Trademark Office for registration of the trademark for "Sh!T vodka." See Exhibits 6-7, Correspondence from William Broussard to Defendant Christopher Greta, previously filed as Exhibits 10-11 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

29.     Defendant Christopher Greta asked LSG's CEO, Mr. Murray what he should do with the application and Mr. Murray informed him that it was his company and that he could not tell Defendants what to do but that the brand was Flagrant Brands's single most valuable asset.

**EXHIBIT C**

30.     On March 9, 2016, Defendant Greta sent Mr. Broussard a message via Facebook stating, "Packing, leaving tomorrow for a month.…Dropping everything and going.  So let it expire for now.  If money comes through later, I'll get it going again."  See Exhibit 8, Facebook Message from Defendant Christopher Greta, previously filed as Exhibit 12 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

31.     LSG's due diligence exposed that Flagrant Brands had not filed the final appeal on the trademark application for "Sh!t vodka" thereby abandoning their trademark application.

32.     LSG sought advice of its intellectual property counsel regarding the trademark issues.

33.     Due to Defendant Christopher Greta's' intentional and/or negligent actions, including, lying, deception, and omission of material information regarding Mr. Broussard and Mr. Broussard's ownership in Defendant Flagrant Brands and due to the fact that Flagrant Brands no longer maintained preferential standing in the trademark for "Sh!t Vodka," LSG terminated the Summary Term Sheet with the intention of submitting a new offer after valuing the potential risks and liabilities that were uncovered in the due diligence.

34.     On March 29, 2016, LSG sent a new offer based on the information discovered during the due diligence, specifically the fraud regarding lack of disclosure to William Broussard and the subsequent failure to secure an appeal of the trademark application and allowing the trademark application to be terminated.  This offer was for $100,000.00 for

**EXHIBIT C**

the purchase of the name Sh!t Vodka.    See Exhibit 9, Offer dated March 29, 2016.  This offer was rejected within hours by Defendants.

35.    LSG then reached out to William Broussard on April 18, 2016 in a final last ditch effort to see if LSG could negotiate a deal between Defendants and Mr. Broussard, even though it was clear that Defendants owned no legal rights to the concept or name. Defendant Christopher Greta refused to even consider this attempt at negotiation stating that he never intended to work with LSG.  See Exhibit 10, Email dated April 14, 2016 from W. Scott Murray to William Broussard and subsequent email chain, previously filed as Exhibit 15 to the First Amended Petition and Answer to Counter Claims of Plaintiff William Broussard.

36.    Defendant Christopher Greta now alleges that Flagrant Brands does not have and has never had any rights to the mark "Sh!t vodka."    See Defendants' Answer and Counterclaims.

## IV.    CAUSES OF ACTION

### COUNT 1: Violations of Section 17(a) of the Securities Act

37.    Plaintiff realleges and incorporates by reference each and every allegation in the paragraphs, inclusive as if they were fully set forth herein.

38.    Defendants attempted to enter into a contract between Flagrant Brands and LSG for the brand and concept "Sh!t"   LSG spent considerable time, resources and attorney fees to research the concept , conduct due diligence and prepare legal documents and opinions.

**EXHIBIT C**

39.     Defendants now allege that the concept was not and is not owned by Flagrant Brands but is the property of Defendant Christopher Greta.

40.     Defendants committed security fraud and lied regarding the Term Sheet to both his business partner and LSG, creating potential contingent liability making.

41.     Defendants knowingly, in the offer or sale of securities, directly or indirectly, by the use if the means or instruments of transportation or communication in interstate commerce, or the mail:

        a.  Employed devices, schemes or artifices to defraud; or

        b.  Obtained money or property by means of any untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, under which they were made, not misleading.

42.     By engaging in the foregoing conduct Defendants violated Section 17(a) of the Securities Act (15 U.S.C. sec. 77q(a)).

43.     As a direct and proximate result thereof, LSG was damaged.

44.     As a result of Defendants' conduct, Defendants are joint and severally liable to Plaintiff for actual and punitive damages.

**Count 2: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

45.     LSG alleges and incorporates by reference all paragraphs set forth above into this cause of action, inclusive as if they were fully set forth herein.

**EXHIBIT C**

46.     Defendants now allege that the concept was not and is not owned by Flagrant Brands but is the property of Defendant Christopher Greta.

47.     Defendants committed security fraud and lied regarding the Term Sheet to both his business partner William Broussard and LSG, creating potential contingent liability making.

48.     Defendants, as a result of the conduct alleged herein, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mail or a facility of national security exchange:

      a.   Employed devices, schemes, or artifices to defraud;

      b.   Made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.   Engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of a security.

49.     By engaging in the foregoing conduct, Defendants violated Section 10(b) of the Exchange Act (15 U.S.C. Sec. 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. 240-10b-5).

50.     Upon information and belief, Defendants engaged in manipulation and deceptive conduct in connection with a securities transaction by failing to disclose information and pretending loyalty while secretly intending to purchase LSG's membership interests for Five Thousand Dollars ($5,000.00) and then immediately sell 80% of them to LSG for

**EXHIBIT C**

the sum of One Million Dollars ($1,000,000.00) of which Five Hundred Thousand Dollars ($500,000.00) would have been paid to LSG, which is one hundred times what Defendant Christopher Greta paid LSG for his interest, while still retaining a twenty percent (20%) membership interest in Flagrant Brands (10% of said interest would have belonged to LSG but for the sale).  Defendant's non-disclosure and misrepresentations regarding the pending sale were deceptive and misleading.  The objective and effect of Defendants' conduct was to prevent LSG from ascertaining the true extent of the value of his shares and to induce LSG to sell whereby Defendant Christopher Greta would be able to purchase the membership interests and profit greatly therefrom, including receiving all of the consideration and benefits that otherwise would have been received by LSG.

51.     Defendants now allege that the concept was not and is not owned by Flagrant Brands but is the property of Defendant Christopher Greta.

52.     In reliance on the forgoing material omissions and misrepresentations by Defendants, LSG was induced to believe that his membership interest in Flagrant Brands had no inherent value and to sell all of his membership interest in Flagrant Brands to Defendant Christopher Greta for Five Thousand Dollars ($5,000.00), when Defendant Christopher Greta knew that the value was much higher based on the Summary Term Sheet with LSG.

53.     As a direct and proximate result thereof, LSG was damaged.

54.     As a result of Defendants' conduct, Defendants are joint and severally liable to LSG for actual and punitive damages.

**EXHIBIT C**

**COUNT 3: Common Law Fraud**

55.　LSG alleges and incorporates by reference all paragraphs set forth above into this cause of action, inclusive as if they were fully set forth herein.

56.　On information and belief, Defendants intentionally and recklessly made material misrepresentations and omissions to LSG.

57.　On information and belief, Defendants made these misrepresentations/omissions willfully, with malice, and in conscious disregard of the rights of LSG.

58.　As a direct and proximate result thereof, LSG was damaged.

59.　As a result of Defendants' conduct, Defendants are joint and severally liable to LSG for actual and punitive damages.

**COUNT 4: Fraudulent Inducement**

60.　LSG alleges and incorporates by reference all paragraphs set forth above into this cause of action, inclusive as if they were fully set forth herein.

61.　On information and belief, Defendants intentionally and materially made misrepresentations to LSG to induce LSG to enter into a Term Sheet with Flagrant Brands.

62.　These representations included but are not limited to: stating that Flagrant Brands was the owner of the brand concept "Sh!t" vodka, when they now allege that it is Defendant Christopher Greta that owns same and stating that they had a valid COLA and other licenses which Defendants did not have, and stating .

63.　Based on these and other false misrepresentations, as stated in the paragraphs above, LSG entered into a Term Sheet with Defendants.

**EXHIBIT C**

64.     Defendants made these misrepresentations/omissions willfully, with malice, and in conscious disregard of the rights of LSG.

65.     As a direct and proximate result thereof, LSG was damaged.

66.     As a result of Defendants' conduct, Defendants are joint and severally liable to LSG for actual and punitive damages.

**COUNT 5: Negligent/Gross Negligent Misrepresentation**

67.     LSG incorporates the allegations set forth in the paragraphs above.

68.     At the time that the Defendants made the foregoing false representations and omissions to LSG, Defendants had no reasonable ground for believing them to be true.

69.     These false misrepresentations and omissions were made intentionally or in a reckless and negligent manner not warranted by the information that Defendants had concerning the subject matter of the representations and without regard to whether or not they were true.

70.     As a direct and proximate result thereof, LSG was damaged.

71.     As a result of Defendants' conduct, Defendants are joint and severally liable to LSG for actual and punitive damages.

## V. DEMAND FOR A JURY TRIAL

72.     In accordance with Rule 38 of the Federal Rules of Civil Procedure, LSG demands a trial by jury.

## VI. REQUEST FOR RELIEF

73.     Accordingly, LSG respectfully requests that this Court grant all legal and equitable relief to which LSG is justly entitled, including the following:

**EXHIBIT C**

A.      Actual damages and profits;

B.      Statutory damages;

C.      Exemplary damages;

D.      Treble damages;

E.      Attorneys' fees;

F.      Court costs; and

G.      Pre- and post-judgment interest.

Respectfully submitted,

Hawkins Parnell Thackston & Young, LLP
1717 West 6th Street, Suite 250
Austin, Texas   78703
(512) 687-6909
(512) 687-6990 (Fax)

By: _____

Amy C. Welborn
State Bar No. 24012853
awelborn@hptylaw.com

## CERTIFICATE OF SERVICE

I certify by my signature above that a true and correct copy of the above and foregoing has been served on the attorneys of record as listed below on this the 29th day of September, 2017.

David Mattka
Munsch Hardt Kopf and Harr, P.C.
303 Colorado Street, Suite 2600
Austin, Texas 78701

Gregg Kroenberger
11701 FM 2244 Road, Suite 203
Austin, Texas 78738

**EXHIBIT C**